UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| SUSAN BENNETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:19-cv-04087-SLD-JEH |
| | ) | |
| AMERICAN FEDERATION OF STATE, | ) | |
| COUNTY, AND MUNICIPAL | ) | |
| EMPLOYEES, COUNCIL 31, AFL-CIO; | ) | |
| AFSCME LOCAL 672; BOARD OF | ) | |
| EDUCATION MOLINE-COAL VALLEY | ) | |
| SCHOOL DISTRICT NO. 40;[1] ATTORNEY | ) | |
| GENERAL KWAME RAOUL, in his | ) | |
| official capacity; and ANDREA R. | ) | |
| WAINTROOB, chair, JUDY BIGGERT, | ) | |
| GILBERT O'BRIEN JR., LYNNE SERED, | ) | |
| and LARA SHAYNE, members, of the | ) | |
| Illinois Educational Labor Relations Board, | ) | |
| in their official capacities, | ) | |
| | ) | |
| Defendants. | ) | |

ORDER

Before the Court are Defendants Attorney General Kwame Raoul, Andrea R. Waintroob,

Judy Biggert, Gilbert O'Brien Jr., Lynne Sered, and Lara Shayne's ("State Defendants") Motion

to Dismiss, ECF No. 14;[2] Defendants American Federation of State, County, and Municipal

Employees, Council 31, AFL-CIO ("Council 31") and AFSCME Local 672's ("Local 672")

(collectively, "the Union") Motion for Summary Judgment, ECF No. 30; Defendant Board of

---

[1] Defendant Board of Education of Moline-Coal Valley School District No. 40 was incorrectly named Moline-Cole Valley School District No. 40 in the caption of the Complaint, ECF No. 1. *See* Not. of Correction, ECF No. 3; Sch. Dist. Answer 1, ECF No. 17.
[2] On July 22, 2019, the parties agreed that the State Defendants' Motion to Dismiss be considered, along with the anticipated joint statement of stipulated facts, as a motion for summary judgment. Agreed Mot. Stay Briefing Mot. Dismiss 1–2, ECF No. 21. On August 2, 2019, the Court granted the agreed motion and will treat the State Defendants' Motion to Dismiss as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(d).

Education Moline-Coal Valley School District No. 40's ("School District") Motion for Summary

Judgment, ECF No. 32; and Plaintiff Susan Bennett's Motion for Summary Judgment, ECF No.

27.  For the reasons that follow, Defendants' motions are GRANTED and Plaintiff's motion is

DENIED.

## BACKGROUND[3]

Plaintiff has been employed as a custodian by the School District since August 2009.

Council 31, a Chicago based labor organization under Section 2(c) of the Illinois Educational

Labor Relations Act ("IELRA"), 115 ILCS 5/1−21, represents public sector workers employed

by government employers in Illinois.  Local 672 is also organized under Section 2(c) of the

IELRA and represents custodial and maintenance employees of the School District out of its

Moline, Illinois location.  The School District is an Illinois public school district with its

principal office located in Moline, Illinois.  The School District is an educational employer under

Section 2(a) of the IELRA.  Attorney General Raoul is sued in his official capacity as the

representative of the State of Illinois charged with the enforcement of state laws, including the

IELRA.  Waintroob, Biggert, O'Brien Jr., Sered, and Shayne, are members of the Illinois

Educational Labor Relations Board ("IELRB") and are sued in their official capacities.  The

IELRB has certified Council 31 as the exclusive representative, pursuant to 115 ILCS 5/8, for the

bargaining unit consisting of the School District's custodial and maintenance employees.

School District employees may become union members but joining the Union has never

been a condition of employment.  Union members had the right to vote on whether to ratify a

---

[3] The facts related here are taken from the Joint Stipulated Record, ECF No. 26, the exhibits attached to it, the State Defendants' Background, State Defs.' Mem. Supp. Mot. Dismiss 1–3, ECF No. 15; the Union's Statement of Facts, Union's Br. Supp. Mot. Summ. J. 2–5, ECF No. 31; and the School District's Statement of Undisputed Material Facts, Sch. Dist.'s Br. Supp. Mot. Summ. J. 2–3, ECF No. 33.  *See* Pl.'s Combined Resp. Defs.' Mots. 2, ECF No. 34 (indicating no objection to the facts recited in the Defendants' motions).

collective bargaining agreement, the opportunity to serve on bargaining committees, the right to

vote in union elections, and the right to be nominated for or elected to union office.  Plaintiff,

who has been employed by School District since August 2009 in a bargaining unit position

represented by Council 31, initially became a member of the Union in November 2009 by

signing a membership and dues-deduction authorization card ("2009 Card") that stated: "I hereby

authorize my employer to deduct the amount as certified by the Union as the current rate of dues.

This deduction is to be turned over to AFSCME, AFL-CIO."  2009 Card, Joint Stip. R. Ex 1,

ECF No. 26-1.  On August 21, 2017, Plaintiff signed a Council 31 membership and dues-

deduction authorization card ("2017 Card") that stated:

> I hereby affirm my membership in AFSCME Council 31, AFL-CIO and authorize
> AFSCME Council 31 to represent me as my exclusive representative on matters
> related to my employment.
>
> I recognize that my authorization of dues deductions, and the continuation of such
> authorization from one year to the next, is voluntary and not a condition of my
> employment.
>
> I hereby authorize my employer to deduct from my pay each pay period that
> amount that is equal to dues and to remit such amount monthly to AFSCME
> Council 31 ("Union"). This voluntary authorization and assignment shall be
> irrevocable for a period of one year from the date of authorization and shall
> automatically renew from year to year unless I revoke this authorization by
> sending written notice . . . to my Employer and to the Union postmarked not more
> than 25 days and not less than 10 days before the expiration of the yearly period
> described above, or as otherwise provided by law.

2017 Card, Joint Stip. R. Ex 2, ECF No. 26-2.

The Union requires yearly dues commitments to facilitate the School District's dues-

deductions process and to help budget and make advance financial commitments, such as renting

offices, hiring staff, and entering into contracts with other vendors.  The Union and the School

District have agreed to three consecutive collective bargaining agreements ("CBA") since July 1,

2014, with the current collective bargaining agreement ("Current CBA") set to expire on June

30, 2020.  The School District deducted union dues from wages earned by Plaintiff and the other

union members in her bargaining unit and remitted them to Council 31.  The School District had

no role, authority, or discretion in determining union membership, the amount of dues

deductions, or the opt-out window.  The Union informed the School District as to who was and

who was not a member and the amount of any dues deduction to be withheld from employees'

paychecks.

Prior to June 27, 2018, nonmember employees were required to pay "fair-share fees" to

the Union pursuant to Article XV, Section 2 of both the 2014–2017 CBA and the 2017–2018

CBA and 5 ILCS 315/6(e).[4]  The School District and Council 31 stopped enforcing the fair-

share-fee requirement of the 2017–2018 CBA and stopped deducting and collecting fair-share

fees immediately after the Supreme Court issued its decision in *Janus v. American Federation of*

*State, County, and Municipal Employees, Council 31*, 138 S. Ct. 2448 (2018).  The Current CBA

contains no fair-share-fee requirement.

In August 2018, Plaintiff attended a union membership meeting, at which time she voted

on whether to ratify the Current CBA.  On March 4, 2019, Plaintiff resigned her union

membership and on July 29, 2019, within the 2017 Card's revocation window, revoked her dues-

deduction authorization.  The School District stopped deducting dues from her wages.

On April 26, 2019, Plaintiff filed suit pursuant to 42 U.S.C. § 1983 and the First and

Fourteenth Amendments (1) alleging that the School District and the Union violated Plaintiff's

First Amendment rights to free speech and freedom of association, Compl. ¶¶ 37–45, ECF No. 1;

(2) seeking a judgment declaring that (i) Defendants' collective bargaining agreement, entered

---

[4] For some reason, the parties cite to the fair-share fee provision in the Illinois Public Labor Relations Act rather than the IELRA's version at 115 ILCS 5/11.  Joint Stip. R. ¶ 27.

under color of and pursuant to Illinois law, violated Plaintiff's free speech rights by purporting to limit the ability of Plaintiff to revoke the dues-deduction authorization to a window of time without affirmative consent, *id*. at 10(a)–11(a); (ii) the 2017 Card signed by Plaintiff—when such authorization was based on an unconstitutional choice between paying the union as a member or paying the union as a nonmember—did not meet the standard for affirmative consent required to waive the First Amendment right announced in *Janus*, *id*. at 11(b); and (iii) the exclusive representation provided for in 115 ILCS 5/3 is unconstitutional, *id*. ¶¶ 46–56; (3) seeking to enjoin (i) the Illinois Attorney General from enforcing 115 ILCS 5/3, *id*. at 11(g); and (ii) Waintroob, Biggert, O'Brien Jr., Sered, and Shayne as members of the IELRB from certifying a union as the exclusive representative in a bargaining unit, *id*. at 12(h).  Plaintiff also seeks damages against the Union for all dues collected from her, before and after the Supreme Court's decision in *Janus*.  *Id*. at 12(i), (j).[5]  The parties move for summary judgment on all claims.

## DISCUSSION

### I.   Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The court must view the evidence "in the light most favorable to the non-moving party[] and draw[] all reasonable inferences in that party's favor, " *McCann v. Iroquois*

---

[5] Plaintiff also seeks a judgment declaring that the School District's practice of withholding union dues from Plaintiff's paycheck is unconstitutional, to prohibit further deductions, and to require the Union to allow Plaintiff to immediately resign her union membership.  Compl. 11(c)–(e).  To satisfy Article III's requirement that courts consider only actual cases or controversies, prospective injunctive relief is only available if plaintiffs demonstrate a real and immediate threat of future injury. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983); *UWM Student Ass'n v. Lovell*, 888 F.3d 854, 860 (7th Cir. 2018) (same).  Plaintiff has resigned from the union and dues are no longer being deducted from her wages, Joint Stip. R. ¶ 39, so Plaintiff's requests for injunctive relief are MOOT.

*Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.,* 477

U.S. 242, 255 (1986)), and determine whether there is sufficient evidence favoring the non-

moving party for a factfinder to return a verdict in its favor. *Anderson*, 477 U.S. at 249. Since

the parties have stipulated to a set of facts, the Court views each party's motion in the light most

favorable to the non-moving party and determines whether the movant is entitled judgment as a

matter of law. 42 U.S.C. § 1983 provides a cause of action against "[e]very person who, under

color of any statute, ordinance, regulation . . . subjects, or causes to be subjected, any [person]

. . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and

laws." Freedom of speech and association are protected by the First Amendment, which is made

applicable to the states through the Fourteenth Amendment.

## II.     Analysis

In *Janus*, the Supreme Court held that the Illinois Public Labor Relations Act's

("IPLRA") enforcement of a collective bargaining agreement's fair-share fee provision violated

the free speech rights of nonmembers because it "compel[ed] them to subsidize private speech on

matters of substantial public concern" without their consent. *Janus*, 138 S. Ct. at 2459–61.

While a nonmember may choose to pay a fair-share fee, one may not be collected "unless the

employee affirmatively consents to pay[,] . . . [thereby] waiving [his] First Amendment rights."

*Id*. at 2486.

Here, Plaintiff argues the Union's previous offer to employees—to be a fair-share-fee

paying nonmember or a dues-paying member—was an unconstitutional choice under *Janus* and

failed to provide her with an opportunity to affirmatively waive her First Amendment right to not

pay the Union a portion of her wages. Pl.'s Mem. Supp. Mot. Summ. J. 3–6, ECF No. 28. She

also argues that the IELRA's exclusive representative provisions violate her First Amendment

rights to freedom of speech and freedom of association.  *Id*. at 7–9.

## A.  Union Dues[6]

Plaintiff argues that after *Janus*, payments to a union could no longer be deducted from a

public employee's wages without the employee's affirmative consent to waive his First

Amendment right to not pay a union.  Pl.'s Mem. Supp. Mot. Summ. J. 3–6.  The Union argues

*Janus* held that *nonmembers* could no longer be constitutionally required to pay fair-share fees,

but that it had no effect on *union members*' obligations to pay fees pursuant to voluntarily signed

membership agreements.  Union's Br. Supp. Mot. Summ. J. 5−10, ECF No. 31.

### 1.  Coercion

Plaintiff argues her dues authorization was coerced because she was given the

unconstitutional choice between paying the Union as a nonmember or a member.  "[B]etween

paying something for nothing and paying more for benefits she did not consider worth the cost,

she decided to take the latter option."  Pl.'s Mem. Supp. Mot. Summ. J. 4.[7]  The Union, relying

on similar cases filed throughout the country after *Janus*, argues that Plaintiff chose to join the

Union and cannot void the dues-deduction authorization commitment on grounds of coercion.

Union's Br. Supp. Mot. Summ. J. 5–8.[8]  Coercion is defined as the "[c]ompulsion of a free agent

by physical, moral, or economic force or threat of physical force."  *Coercion*, Black's Law

---

[6] The parties debate whether Defendants' conduct constituted state action under section 1983 and the First and Fourteenth Amendments to the Constitution.  While far from clear, the Court will assume state action for purposes of the order.

[7] The Union calls attention to the missing factual basis for Plaintiff's claim—there is no evidence "that she only joined the Union because of the then-applicable fair-share fee requirement."  Union's Br. Supp. Mot. Summ. J. 7–8. Instead, the evidence shows Plaintiff voluntarily became a union member and received membership benefits in exchange.  *See* Joint Stip. R. ¶¶ 10, 13, 41–43 (listing benefits such as "home mortgage assistance," . . . "access to scholarship programs" and "discounts on wireless phone plans, auto insurance, life insurance, and legal services.") Once Plaintiff resigned her membership, she no longer had membership rights or access to members-only benefits.

[8] "[E]mployees shall . . . have the right to refrain from any or all [collective bargaining] activities."  115 ILCS 5/3(a).

Dictionary (11th ed. 2019). "Economic duress . . . is an affirmative defense to a contract, which releases the party signing under duress from all contractual obligations. Duress occurs where one is induced by a wrongful act or threat of another to make a contract under circumstances that deprive one of the exercise of one's own free will." *Krilich v. Am. Nat'l Bank & Tr. Co. of Chi.*, 778 N.E.2d 1153, 1162 (Ill. App. Ct. 2002) (citation omitted).

Plaintiff does not factually or legally support her coercion claim and courts faced with similar challenges post-*Janus* have rejected coercion arguments. *See Oliver v. Serv. Emps. Int'l Union Local 668*, 415 F. Supp. 3d 602, 606−08 (E.D. Pa. 2019) (rejecting the plaintiff's argument that she was coerced because a state statute made union membership voluntary); *Babb v. Cal. Teachers Ass'n*, 378 F. Supp. 3d 857, 877 (C.D. Cal. 2019) ("Plaintiffs voluntarily chose to pay membership dues in exchange for certain benefits, and the fact that [they] would not have opted to pay union membership fees if *Janus* had been the law at the time of their decision does not mean their decision was therefore coerced." (brackets and quotation marks omitted)); *Bermudez v. Serv. Emps. Int'l Union, Local 521*, No. 18-cv-04312-VC, 2019 WL 1615414, at *2 (N.D. Cal. Apr. 16, 2019) (rejecting plaintiffs' state law claims for a refund of their membership dues because the decision to pay dues was not coerced or wrongfully collected but based on a valid contract term); *Belgau v. Inslee*, 359 F. Supp. 3d 1000, 1016–17 (W.D. Wash. 2019) (holding that neither statute nor collective bargaining agreement compelled involuntary dues deductions and the "notion that the [p]laintiffs may have made a different choice if they knew the Supreme Court would later invalidate public employee agency fee arrangements in *Janus* does not void their previous knowing agreements" (quotation marks and brackets omitted)); *Cooley v. Cal. Statewide Law Enf't Ass'n*, No. 2:18-cv-02961-JAM-AC, 2019 WL 331170, at *3 (E.D.

Cal. Jan. 25, 2019) (same).  Accordingly, Plaintiff has not shown she was under pressure to sign

the 2017 Card or otherwise demonstrated that she was coerced.

### 2.  Knowing and Voluntary Waiver

Relatedly, Plaintiff argues she did not knowingly and voluntarily waive her First

Amendment right to not pay the Union because *Janus* had not been decided when she signed the

2017 Card.  Pl.'s Mem. Supp. Mot. Summ. J. 4–6; *see Johnson v. Zerbst*, 304 U.S. 458, 464

(1938) ("A waiver is ordinarily an intentional relinquishment or abandonment of a known right

or privilege").  After all, a waiver of a constitutional right "must be freely given and shown by

clear and compelling evidence."  Pl.'s Mem. Supp. Mot. Summ. J. 3 (quoting *Janus*, 138 S. Ct. at

2486) (quotation marks omitted).  The Union shifts the discussion to better describe the "right"

waived here.[9]  While obligated under a union agreement, Plaintiff did not have a right to not pay

a fair-share fee without giving affirmative consent.  Perhaps Plaintiff is actually arguing that her

2017 Card involuntarily and unknowingly waived her right to take advantage of *Janus*.  But

signing a membership agreement suggests that she was not intending to assert her right to remain

a no-fee paying nonmember.  And the right created in *Janus* was unknown in 2017 when

Plaintiff signed the dues-deduction authorization card.  "[C]hanges in intervening law—even

constitutional law—do not invalidate a contract."  *Smith v. Bieker*, No. 18-cv-05472-VC, 2019

WL 2476679, at *2 (N.D. Cal. June 13, 2019) (citing *Brady v. United States*, 397 U.S. 742, 757

---

[9] Relying on *Harper v. Virginia Department of Taxation*, 509 U.S. 86, 97 (1993), Plaintiff argues *Janus* applies
retroactively, meaning that the Union and the School District were required "to secure Plaintiff's affirmative consent
for the knowing and voluntary waiver of her rights not to join a union. . . . Because they did not[,] . . . the Union
could not compel her to be a member . . . or to continue to pay [U]nion dues. . . . Plaintiff's union card is void under
*Janus*."  Pl.'s Mem. Supp. Mot. Summ. J. 5–6.  The evidence indicates Plaintiff "affirm[ed her] membership in [the
Union]" and that her "authorization of dues deductions . . . [wa]s voluntary."  Joint. Stip. R. ¶ 13.  Again, Plaintiff
points to no evidence that she would have chosen to not join the Union if she had known she had a First Amendment
right to not pay a fair-share fee.  Plaintiff's argument that the Court should apply *Janus* retroactively to void her
voluntarily entered membership and dues-deduction authorization card is rejected.

(1970)).  Parties may enter into mutually beneficial contracts that by implication foreclose future

opportunities.

For instance, courts routinely uphold plea agreements that waive defendants' rights to

appeal or collaterally attack their convictions even when the Supreme Court modifies

constitutional criminal law or procedures in their favor.  "[O]ne major purpose of an express

waiver is to account in advance for unpredicted future developments in the law."  *Oliver v.*

*United States*, 951 F.3d 841, 845 (7th Cir. 2020).  "By binding oneself one assumes the risk of

future changes in circumstances in light of which one's bargain may prove to have been a bad

one."  *Id.* (quotation marks omitted).  A defendant may regret his plea agreement because he did

not anticipate a Supreme Court ruling, but that "does not render his decision to plead guilty

involuntary."  *United States v. Vela*, 740 F.3d 1150, 1154 (7th Cir. 2014).  If incarcerated

defendants cannot rescind agreements as involuntary in light of subsequently developed

constitutional caselaw, civil litigants disputing property rights should fare no differently.

Accordingly, Plaintiff's obligation to pay union dues pursuant to the 2017 Card remains

enforceable despite the new constitutional right identified in *Janus*.  *See also Jared Allen v. Ohio*

*Civil Serv. Emps. Ass'n AFSCME, Local 11*, No. 2:19-cv-3709, 2020 WL 1322051, at *9 (S.D.

Ohio Mar. 20, 2020) ("Plaintiffs have not identified any cases where an individual voluntarily

entered into a contract with full information as to the rights he/she was giving up, waived those

rights, and subsequently was permitted to break that contract based on a change in the law

applicable to those rights."); *Smith v. Superior Court, Cty. of Contra Costa*, No. 18-cv-05472-

VC, 2018 WL 6072806, at *1 (N.D. Cal. Nov. 16, 2018) (rejecting the plaintiff's attempt to

invalidate his union contract after *Janus* because it was "not the rights clarified in *Janus* that are

relevant[.  The plaintiff's] First Amendment right to opt out of union membership was clarified

in 1977, and yet he waived that right by affirmatively consenting to be a member of Local 2700."

(citing *Abood v. Detroit Bd. of Educ.*, 431 U.S. 209, 235-36 (1977), *overruled by Janus*, 138 S.

Ct. at 2464)).

The fact that Plaintiff did not sign a waiver of the later-identified First Amendment right

to not pay a fair-share fee does not invalidate her agreement to join the Union.[10]  The 2017 Card

was not the product of coercion and was not involuntary simply because *Janus* made union

membership less appealing.

## B.  Exclusive Representation

Representatives selected by a bargaining unit "shall be the exclusive representative of all

the employees in such unit to bargain on wages, hours, terms and conditions of employment."

115 ILCS 5/3(b).  Plaintiff argues that this exclusive representation is unconstitutional because

the Union uses it to compel her "speech [when] []the union speaks on behalf of the employees, as

though its speech is the employees' own speech[]" and her "association [because] []the union

represents everyone in the bargaining unit without any choice or alternative for dissenting

employees not to associate.[]"  Pl.'s Mem. Supp. Mot. Summ. J. 7.  She asserts exclusive

representation is subject to "at least exacting scrutiny, if not strict scrutiny."  *Id.* at 8 (citing

*Knox v. Serv. Emps. Intl Union, Local 1000*, 567 U.S. 298, 310 (2012) (discussing standard of

review for mandatory associations)).

State Defendants contend that requiring exclusive representation does not create a

mandatory association, State Defs.' Mem. Supp. Mot. Dismiss 5, ECF No. 15, and that *Janus* did

not otherwise disturb the "bedrock principle of labor law" that permits a majority of employees

to select an exclusive representative to represent all employees of the bargaining unit, *id*. at 3–7.

---

[10] Even after Plaintiff resigned her union membership, she was required to fulfill her commitment to pay union dues under the dues-deduction authorization card.  Joint Stip. R. ¶¶ 13, 24, 25, 33–36, 38.

In support, they and the Union cite *Minnesota State Board for Community Colleges v. Knight*, 465 U.S. 271, 271 (1984), *D'Agostino v. Baker*, 812 F.3d 240, 244 (1st Cir. 2016), *Hill v. Serv. Emps. Int'l Union,* 850 F.3d 861 (7th Cir. 2017), and cases that have considered the issue after *Janus*.

Mandatory associations that force membership and financial support for group speech "implicate the First Amendment freedom of association, which includes the freedom to choose not to associate, and the First Amendment freedom of speech, which also includes the freedom to remain silent or to avoid subsidizing group speech with which a person disagrees." *Kingstad v. State Bar of Wis.*, 622 F.3d 708, 712–13 (7th Cir. 2010) "Despite [a] general rule against 'forced speech,'. . . the Supreme Court has found that certain mandatory associations—agency shops, agricultural marketing collectives, and integrated or mandatory bars—are permitted under the First Amendment because the forced speech serves legitimate governmental purposes for the benefit of all members." *Id.* at 713. "Mandatory associations are subject to exacting scrutiny, meaning they require a compelling state interest that cannot be achieved through significantly less-restrictive means." *Hill,* 850 F.3d at 863.

In *Knight*, non-union college instructors objected to the union's exclusive right to bargain on educational policies, topics beyond the scope of a typical labor relations statute. The Court held that "[t]he state ha[d] in no way restrained [instructors'] freedom to speak on any education-related issue or their freedom to associate or not to associate with whom they please, including the exclusive representative. Nor has the state attempted to suppress any ideas." *Knight*, 465 U.S. at 288. Additionally, the instructors were free to not join the union and to form advocacy groups. *Id.* at 289. Plaintiff argues that the instructors in *Knight* sought a right to force the government to listen to their policy views in a formal setting, whereas she only seeks to not be

12

associated with the Union.  Pl.'s Combined Resp. Defs.' Mots. 21, ECF No. 34.  This is a

distinction without a difference—regardless of a nonmember's motivation to contest the

association, the effect on First Amendment rights necessarily resulting from exclusive

representation is not sufficient to invalidate it.

Similarly, in *D'Agostino*, nonmembers bristled at exclusive-bargaining representation.

The court concluded that "exclusive bargaining representation by a democratically selected

union d[id] not, without more, violate the right of free association on the part of dissenting non-

union members of the bargaining unit."  *D'Agostino*, 812 F.3d at 244.  Further, it rejected that a

nonmember's association with a union resulted in compelled speech.

> [T]he relationship is one that is clearly imposed by law, not by any choice on a
> dissenter's part, and when an exclusive[-]bargaining agent is selected by majority
> choice, it is readily understood that employees in the minority, union or not, will
> probably disagree with some positions taken by the agent answerable to the
> majority. And the freedom of the dissenting [employees] to speak out publicly on
> any union position further counters the claim that there is an unacceptable risk the
> union speech will be attributed to them contrary to their own views; they may
> choose to be heard distinctly as dissenters if they so wish, and . . . the higher
> volume of the union's speech has been held to have no constitutional significance.

*Id.* The employees were not "compelled to act as public bearers of an ideological message they

disagree[d] with," *id*. (citing *Wooley v. Maynard*, 430 U.S. 705 (1977)), required "to modify the

expressive message of any public conduct they may choose to engage in," *id*. (citing *Hurley v.

Irish–Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557 (1995)), or "under any

compulsion to accept an undesired member of any association they may [have] belong[ed] to,"

*id*. (citing *Boy Scouts of Am. v. Dale*, 530 U.S. 640 (2000)).

In *Hill,* non-union employees asserted that the IPLRA's exclusive-bargaining provisions

created an unconstitutional association.  *Hill*, 850 F.3d at 863.  The court, relying on *Knight* and

13

*D'Agostini*, concluded that "the IPLRA[] . . . d[id] not compel an association that trigger[ed] heightened First Amendment scrutiny." *Id.* at 865.[11]

Plaintiff also suggests the exclusive-bargaining representation set forth in 115 ILCS 5/3(b) imposes too great a burden on the First Amendment principles identified in *Janus*. But it is clear that *Janus* did not reach the issue and instead, reaffirmed the traditional labor system. "States can keep their labor-relations systems exactly as they are—only they cannot force nonmembers to subsidize public-sector unions." *Janus,* 138 S. Ct. at 2485 n.27.

> [T]he State may require that a union serve as exclusive[-]bargaining agent for its employees—itself a significant impingement on associational freedoms that would not be tolerated in other contexts. We simply draw the line at allowing the government to go further still and require all employees to support the union irrespective of whether they share its views.

*Id.* at 2478. On remand, the Seventh Circuit reiterated the viability of exclusive union representation. "[T]he union still enjoys the power and attendant privileges of being the exclusive representative of an employee unit." *Janus v. Am. Fed'n of State, Cty. & Mun. Emps., Council 31,* 942 F.3d 352, 358 (7th Cir. 2019). It is "[t]he principle . . . [that] lies at the heart of our system of industrial relations." *Id.* at 354. This leaves *Knight*, *Hill,* and exclusive representation undisturbed. *See also Mentele v. Inslee*, 916 F.3d 783, 789 (9th Cir. 2019) (holding that the state's "authorization of an exclusive[-]bargaining representative d[id] not infringe [an employee]'s First Amendment rights"); *Bierman v. Dayton*, 900 F.3d 570, 574 (8th Cir. 2018) (applying *Knight,* because *Janus* did not consider *Knight* or the constitutionality of exclusive representation, to conclude that statute permitting it "did not impinge on the right of

---

[11] Plaintiff argues the *Hill* plaintiffs were not considered "full-fledged" public employees, *Hill*, 850 F.3d at 862 n.1, a status that necessarily narrowed the scope of the union's representation to only those "terms and conditions of employment that [we]re within the State's control," 20 ILCS 2405/3(f). Plaintiff does not explain how this distinction impacted the court's decision, Combined Resp. Defs.' Mots. 22, and the Court will not speculate, especially in light of *Knight's* controlling precedent involving "full-fledged" employees.

association"). As the IELRA does not create a mandatory association, "it is not subject to heightened scrutiny," *Hill*, 850 F.3d at 866, and is not an unconstitutional impingement on Plaintiff's freedom to associate as protected by the First Amendment, *Knight*, 465 U.S. at 288.

## CONCLUSION

Accordingly, the State Defendants' Motion to Dismiss, ECF No. 14, the Union's Motion for Summary Judgment, ECF No. 30, and the School District's Motion for Summary Judgment, ECF No. 32, are GRANTED. Plaintiff's Motion for Summary Judgment, ECF No. 27, is DENIED. This action is DISMISSED WITH PREJUDICE. The Clerk is directed to enter judgment and close the case.

Entered this 31st day of March, 2020.

s/ Sara Darrow
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE